[Civ. Nos. 3606, 3607.   Second Appellate District, Division One.—May 17, 1921.]

## ELIZABETH M. NAGLE SEXSON, Respondent, v. OLIVER V. SEXSON, Appellant.

[1] HUSBAND AND WIFE — CONVEYANCES TO HUSBAND — CONFLICT OF EVIDENCE—APPEAL.—In an action by a wife to determine her ownership of real property conveyed to her husband for the alleged purpose of enabling him to obtain an immediate and temporary credit and upon his agreement to reconvey upon request after the credit had been obtained, the conclusions of the trial judge as to the facts must be treated as final, where the testimony

of the husband that the deeds were for a valuable consideration merely presented a conflict with the plaintiff's testimony.

[2] ID. — TRUST—STATUTE OF LIMITATIONS. — Where a wife conveyed real property to her husband for the sole purpose of enabling him to obtain a credit and upon his agreement to reconvey when the credit had been obtained, she parted with only the naked legal title and the husband received the property as trustee, and the statute of limitations would not commence to run against the wife's rights until demand for reconveyance or repudiation of the trust.

[3] ID. — LACHES — LACK OF PREJUDICE. — In the absence of circumstances disclosing prejudice by the mere lapse of time occurring between the date of the conveyance and the date of the commencement of the action, the defense of laches was without merit.

APPEALS from judgments of the Superior Court of San Diego County. E. A. Luce, Judge. Affirmed.

The facts are stated in the opinion of the court.

Adam Thompson and Renwick Thompson for Appellant.

Titus & Macomber for Respondent.

JAMES, J.—Two actions were brought in the superior court by the above-named plaintiff against the above-named defendant, in each of which judgment was rendered in favor of the plaintiff. Separate appeals were taken by the defendant from the judgments. The cases were tried together in the superior court and by stipulation the appeals are presented in the same way.

The actions of the plaintiff were brought for the purpose of having it determined that she was owner of certain real property situated in the city of San Diego. The general allegations of the two complaints were similar, except that the property involved was of different descriptions. For the sake of brevity we will designate the property described in action 3606 as the Horton's Addition lot, and that described in action 3607 as the Hillcrest lot. The plaintiff first alleged that she was, and for a long time prior to the occurrence of the matters stated in her complaint had been, the wife of the defendant; that she was the owner of both of the lots mentioned in her sole and separate right; that in November, 1913, she deeded to the defendant an undivided one-third interest in the Horton's

Addition lot, and in April, 1918, transferred the legal title to the Hillcrest lot to the defendant. She alleged that these transfers were made without consideration of any kind and were made "for the purpose of establishing an immediate and temporary credit for said defendant, and under the agreement and promise of the defendant to use said property for such purpose and no other, and with the specific understanding and agreement between plaintiff and defendant that defendant would deed said property to plaintiff upon her request after any credit obtained by the defendant by virtue of holding said property had been satisfied." Demand was alleged to have been made upon the defendant on or about the first day of November, 1919, that he deed the property back to the plaintiff, and that such demand had not been complied with. In a second cause of action alleged in each of the complaints it was set out that the deeds of the plaintiff to both parcels of realty had been obtained by fraud and undue influence; that defendant had great influence over the plaintiff on account of the relationship existing between the two and that the plaintiff had great confidence in the defendant and great reliance upon statements made by him, and by reason thereof, upon his representing and agreeing that he would deed back the property to her at her request, she made the transfers hereinbefore referred to. She alleged further that defendant at the time of the making of said representations did not intend to deed the property back to her in accordance with his agreement, but intended to defraud plaintiff out of her real property. Allegation was also made that plaintiff did not discover the "said fraud of said defendant until she demanded that defendant deed said property to her, to wit, on or about the first day of November, 1919."

[1] The parties to the actions were married in 1909. The defendant was then employed as driver for a transfer company and earned an amount which, according to his testimony, varied from $125 to $140 per month. He continued steadily at this employment up to about April, 1916, when he ceased to work for a period of about one year, and then secured employment in the sheriff's office in San Diego County, in which position he was employed at the time of the trial of the action. In the fall of 1919 he ceased

to live with plaintiff and in 1920 the two actions here concerned were brought, one on February 27th and one on April 7th. It is shown by the evidence that at the time of her marriage plaintiff owned the Horton's Addition lot, which was a lot about 50 by 100 feet in dimensions, located in the downtown district of the city of San Diego. According to some testimony offered at the trial, this lot in 1913 was worth, exclusive of improvements, about $25,000. In 1910 it was decided by the plaintiff and defendant that a garage building should be erected on this lot. Plaintiff did not possess the necessary funds to pay the construction cost. The defendant owned in his separate right a lot in another part of the city and besides had in cash about $1,000. (His wife testified the amount was $600.) He arranged to deed to the contractor who was to construct the garage building the lot owned by him at an agreed valuation of $2,100, and added to that the amount of money which he had. Mrs. Sexson had several hundred dollars in cash and enough more money was borrowed to make up the contract price of the garage building, which was $7,500. Upon its completion the building was immediately rented and continued thereafter to be steadily occupied by a tenant. The rents were collected by the defendant and placed in an account at the bank which was first kept in the name of the defendant only, but later in the joint names of the plaintiff and defendant. Out of this money the several indebtednesses incurred on account of the construction of the garage were satisfied in installment payments, except that it was the contention of the defendant that he never was reimbursed out of that money for his contribution toward the building of the garage, which contribution, taking the admission of the plaintiff as to the amount, was the sum of $2,700. The earnings of the defendant in his employment were used to satisfy the living expenses of the family. From the time the garage was built in 1910, up to November, 1913, defendant had not received from the plaintiff any written evidence showing the amount of money from his separate estate that he had contributed toward the building of the garage. It was on November 20, 1913, that the wife deeded to defendant an undivided one-third interest in the garage property. The circumstances attending the whole matter of the building

of the garage and the use of the defendant's separate funds in that enterprise are persuasive, as the story is read from the printed page, as affirming the truth of defendant's claim, and as indicating that when the deed of the one-third interest was made it was executed for the purpose of adjusting the separate interests of the husband and wife in the garage property. In suggesting this conclusion, however, we are here met with the condition that the plaintiff made a sworn declaration as to a totally different understanding and agreement. She testified that for the money advanced by the husband it was agreed that he would reimburse himself from the rents afterward collected. A statement of the amounts of rent which were collected by the defendant and deposited in the account referred to in the bank was received in evidence, and it does appear that the income was of such a sum as, deducting taxes and allowing for payment of the outside indebtedness, would leave enough money to have satisfied defendant's claim for the amount contributed by him toward the construction of the building. Admitting a sharp conflict to have existed between the sworn testimony of the plaintiff and defendant, it must, nevertheless, be said that the findings, upon all of the issues as to the facts set out in the first alleged cause of action as asserted by the plaintiff, find support in the evidence. The court was not assisted by having presented in complete detail a schedule of the various expenditures made on behalf of both of the parties during the time that they lived together as husband and wife. Such tangible evidence as bank accounts and canceled checks was not produced, nor books of account, to show how and for what purpose the joint or separate incomes were expended. The Hillcrest property was purchased after the marriage of the parties. Mrs. Sexson testified that her husband asked her to deed it to him "for the same purpose, to establish a credit, and I gave it to him for the same purpose. He wanted to go on a cattle ranch and he said he had to have a credit and a prestige." One other witness testified to having heard the defendant express a desire to go into the ranching business. The defendant testified that the deeds to him were for a valuable consideration. He denied all of the assertions made by the plaintiff as to alleged conditions affecting the transactions. As we have noted, however, such

testimony presented a conflict in the evidence. Under such a state of the record the conclusions made by the trial judge as to the facts must be treated as final.

[2] In what has been stated as to the sufficiency of the evidence we refer more particularly to that affecting the cause of action first alleged in plaintiff's complaint. The court in its findings determined that all of the allegations of the complaint as amended were true. The cause of action first alleged was one presenting a case where the defendant received the title to the real property involved in the two actions in trust, to be held subject to the conditions stated. Under the circumstances alleged and shown, plaintiff parted with the naked legal title only to her property and the defendant received the same as trustee subject to the right of the plaintiff to have that title revested in her by conveyance from the defendant after it had served the agreed purpose. The statute of limitations would not commence to run against the plaintiff's right until demand was made of defendant that he reconvey, or until the repudiation of the trust by the trustee. (*Taylor v. Morris,* 163 Cal. 717, [127 Pac. 66].) This statement we make in answer to the contention of appellant that his demurrer urging the bar of the statute of limitations should have been sustained. There was no evidence tending to show any repudiation of the trust at such a time prior to the commencement of the action as would make applicable either of the particular statutes pleaded. Plaintiff's demand for reconveyance was made within less than a year before the date of the commencement of the actions. [3] The defense of laches, which was further interposed by the defendant in his answer, was without merit under the facts as they were asserted by the plaintiff to be. No circumstances were disclosed such as to show that the defendant was prejudiced by the mere lapse of time occurring between the date of the conveyance and the dates upon which the two actions were commenced. (See *Cahill* v. *Superior Court,* 145 Cal. 42, [78 Pac. 467]; *Kleinclaus* v. *Dutard,* 147 Cal. 245, [81 Pac. 516].) We have referred particularly to the contentions made in the brief of appellant as against the cause of action first asserted in plaintiff's complaint. This because, as we have already noted, that cause of action was sufficiently sustained by the

evidence. The relief sought, as depending upon the two causes of action, was the same; hence if the evidence sustained the first cause, it becomes immaterial as to whether the evidence was sufficient to support the findings upon the second alleged cause of action. Under the condition suggested, the judgment would necessarily have to be sustained; hence a discussion of appellant's points as urged against the cause of action for alleged fraud could serve no useful purpose.

The judgments appealed from are affirmed.

Conrey, P. J., and Shaw, J., concurred.