[L. A. No. 19262.   In Bank.   Mar. 27, 1946.]

MARIE IDA HUBER, Appellant, v. WILLIAM X. HUBER, Respondent.

Hahn, Graf & Ross and A. A. Goldstone for Appellant.

George Penney and Earl D. Killion for Respondent.

CARTER, J.—Plaintiff, wife, obtained an interlocutory decree of divorce from defendant on the ground of extreme cruelty. The marriage had lasted five years. The court found that certain parcels of real property were acquired during the marriage and title taken in the names of plaintiff and defendant as joint tenants, but that inasmuch as it was purchased with the separate funds of defendant it was his separate property, and further, that in taking the property in joint tenancy defendant did so ''as a mere matter of convenience to himself and in order that title would as he believed, pass to plaintiff one-half only of said properties upon his death if he had not otherwise directed in his life-time. . . . The Court further specifically finds that the defendant did not intend to vest any present interest in said properties in the plaintiff and that

she was fully conversant with that fact." The court also found that plaintiff had no interest in that real property.

Plaintiff challenges the admission of evidence to the effect that there was no intention to create a joint tenancy, and plaintiff acquired no such rights, and also the sufficiency of the evidence on that issue and the lack of interest of plaintiff in the rents, issues and profits from said property.

Turning first to the question of admissibility of evidence and assuming that the real property was acquired with the separate funds of defendant, we have a situation where a husband purchases real property after marriage with his separate funds and has the grantor convey the property to him and his wife as joint tenants. The evidence to refute the joint tenancy consisted of the following: "Q. Now, you have stated that when you acquired these properties and had them placed in joint tenancy, you did it because you were under the impression that if you were married at the time of your death she could get half of them? A. That is correct. Q. Well, what did you think would be the situation if you were not married? A. Well, they would be my property. Q. Well, they stood in the two names. How were you going to get out of the two names? A. That, I don't know. I did not think of it at the time, because when I made the arrangement on the first place Mrs. Huber was in the car when I came out and made the payment, and I told her: 'Well, I have fixed it so you will get half if we are married at the time of my death.' Q. Are you sure you said: 'If we are married' or 'When I die you will get half?' A. No, I remember because we parked the car five feet from the entrance." And "Q. Did you intend, at the time you bought the third piece of property, to give to Mrs. Huber a half interest or any interest whatsoever in the property at that time? A. Not at that time. Q. Did you know, at the time you took the third piece of property in your joint names, that there was a legal presumption she became the owner of an undivided one-half interest in and to the property? A. No." And "Q. Was it your intention on any of these properties that she should have become vested in any interest during your lifetime? A. No, sir, she was not." The property was purchased with defendant's separate funds. Plaintiff deposited the rents she collected in the defendant's separate bank account upon which she had no authority to draw. The leases on the property were executed by defendant alone. Plaintiff never claimed any interest in the property

and no accounting was made to her of the rents and profits thereof. While it may be true that a delivery to one of two grantees is considered a delivery to both, no physical delivery of the deeds was ever made to plaintiff and she never had possession of any of the property here involved.

■ It is clear that evidence is admissible to show that real property was intended to be held as community property and is in fact of that character although title has been acquired under a deed accepted by husband and wife and executed in a form that ordinarily creates in the grantee a common law estate such as joint tenancy, and that an oral agreement to convert property into community property may be established. (*Sears* v. *Rule, ante,* p. 131 [163 P.2d 443]; *Tomaier* v. *Tomaier,* 23 Cal.2d 754 [146 P.2d 905]; *Estate of Watkins,* 16 Cal.2d 793 [108 P.2d 417, 109 P.2d 1]; *Kenney* v. *Kenney,* 220 Cal. 134 [30 P.2d 398]; *Estate of Cronvall,* 220 Cal. 503 [31 P.2d 372]; *Trimble* v. *Trimble,* 219 Cal. 340 [26 P.2d 477]; *Hulse* v. *Lawson,* 212 Cal. 614 [299 P. 525]; *Hibernia Sav. & Loan Soc.* v. *DeRyana,* 210 Cal. 532 [292 P. 632]; *Salveter* v. *Salveter,* 206 Cal. 657 [275 P. 801]; *Estate of Kelpsch,* 203 Cal. 613 [265 P. 214]; *Hammond* v. *McCollough,* 159 Cal. 639 [115 P. 216]; *Title Insurance etc. Co.* v. *Ingersoll,* 153 Cal. 1 [94 P. 94]; *Jaegel* v. *Johnson,* 148 Cal. 695 [84 P. 175]; *Estate of Wilson,* 64 Cal.App.2d 123 [148 P.2d 390]; *Horsman* v. *Maden,* 48 Cal.App.2d 635 [120 P.2d 92]; *Jansen* v. *Jansen,* 127 Cal.App. 294 [15 P.2d 777].)

■ By close analogy it is likewise true that parol evidence is admissible to establish the absence of an intention to make a gift of either separate or community property, although the instrument of conveyance is made by the husband to the wife alone or as joint tenant with him or is from a third person to the wife or to both as joint tenants at the husband's direction in cases where there is no showing of fraud, mistake or undue influence. (See *Fanning* v. *Green,* 156 Cal. 279 [104 P. 308]; *Hogevoll* v. *Hogevoll,* 59 Cal.App.2d 188 [138 P.2d 693]; *Horsman* v. *Maden, supra; Chamberlain* v. *Chamberlain,* 2 Cal.App.2d 684 [38 P.2d 790]; *Whitaker* v. *Whitaker,* 137 Cal.App. 396 [30 P.2d 538]; *Minnich* v. *Minnich,* 127 Cal. App. 1 [15 P.2d 804]; *Stephenson* v. *Brand,* 122 Cal.App. 543 [10 P.2d 476]; *Estate of Bruggemeyer,* 115 Cal.App. 525 [2 P.2d 534]; *Estate of Nelson,* 104 Cal.App. 613 [286 P. 439]; *Dale* v. *Dale,* 87 Cal.App. 359 [262 P. 339]; *Tilden* v. *Tilden,* 81 Cal.App. 535 [254 P. 310].)

Plaintiff argues, however, that the undisclosed and secret intention of the husband not to make a gift to his wife cannot be established by parol evidence, citing *Shaver* v. *Canfield,* 21 Cal.App.2d 734 [70 P.2d 507], and *Watson* v. *Peyton,* 10 Cal.2d 156 [73 P.2d 906], but as indicated by the foregoing quotation from the record, defendant advised plaintiff of his intention as to the first parcel of real property and it may be inferred that the placing of the other parcels in joint tenancy was done under like circumstances.

Plaintiff also relies upon *Kenney* v. *Kenney,* 220 Cal. 134 [30 P.2d 398]; *In re Kessler,* 217 Cal. 32 [17 P.2d 117]; *Perkins* v. *Sunset Tel. & Tel. Co.,* 155 Cal. 712 [103 P. 190]; *Yoakam* v. *Kingery,* 126 Cal. 30 [58 P. 324]; *Schipper* v. *Penkalski,* 46 Cal.App.2d 28 [115 P.2d 231]; *Estate of Henderson,* 128 Cal.App. 397 [17 P.2d 786]; *Thomas* v. *Hoffman,* 122 Cal.App. 213 [9 P.2d 538]; *Estate of Sill,* 121 Cal.App. 202 [9 P.2d 243]; *Estate of Wahlefeld,* 105 Cal.App. 770 [288 P. 870]. The correct holding of the Kessler case was stated in *Tomaier* v. *Tomaier, supra,* 759, in accordance with the views herein expressed. The Schipper, Yoakam, Perkins, Kenney, Sill and Wahlefeld cases merely hold that husband and wife may by written or executed oral agreement change the character of their property. They do not hold that a showing of true intent may not be made by parol. *Tomaier* v. *Tomaier, supra,* must be considered as settling the law on the subject. Moreover it may be inferred from the above mentioned evidence that an executed oral agreement was made to the effect that she was not to receive a present gift by virtue of the conveyance of the property to her and defendant as joint tenants. *Estate of Gaines,* 15 Cal.2d 255 [100 P.2d 1055], relied upon by plaintiff did not involve transactions between husband and wife.

Plaintiff cites *Bias* v. *Reed,* 169 Cal. 33 [145 P. 516], *Estate of Granniss,* 142 Cal. 1 [75 P. 324], and *Estate of McCarthy,* 127 Cal.App. 80 [15 P.2d 223], to the effect that transmutation of the property may not be established by declarations of the parties. The Granniss case was concerned only with the interpretation of a will. It appears that the court considered such declarations admissible in the Bias case, but concluded they were insufficient to establish the fact. It is obvious that the court was weighing the evidence which it should not have done. Declarations of the spouses are

admissible to show whether a gift was intended. (See *Whit-low* v. *Durst*, 20 Cal.2d 523 [127 P.2d 530].)

We conclude therefore that the evidence was admissible and sufficient to sustain the finding that defendant did not intend to make a present gift to plaintiff. Plaintiff calls attention to evidence that defendant referred to the property as "ours" and other like expressions, but nothing more than a conflict was created which the trial court resolved against her.

In this state it is settled that because of the confidential relationship between husband and wife, an oral agreement between the spouses in connection with a conveyance of real property between them or by a third person to one of them can be enforced by making the grantee a constructive trustee for the other spouse if the grantee violates such an oral agreement. (*Quinn* v. *Reilly*, 198 Cal. 465 [245 P. 1091]; *Bradley Co.* v. *Bradley*, 165 Cal. 237, 240 [131 P. 750]; *Lauricella* v. *Lauricella*, 161 Cal. 61, 65 [118 P. 430]; *Brison* v. *Brison*, 75 Cal. 525, 528 [17 P. 689, 7 Am.St.Rep. 189]; *Sexson* v. *Sexson*, 52 Cal. App. 644 [199 P. 61]; see *Altramano* v. *Swan*, 20 Cal.2d 622 [128 P.2d 353]; Rest., Trusts, § 44; 1 Scott, Trusts, § 44.2; 35 A.L.R. 281, 311; 45 A.L.R. 851, 854; 13 Cal.Jur. 869; 54 Am.Jur. 178.) An oral agreement between husband and wife to whom property is deeded as joint tenants, that while both spouses are alive one of them should have no beneficial interest in the property should likewise be enforced by impressing a trust upon the share of a spouse who attempts to violate such an agreement. (See *Kramer* v. *Watnick*, 63 Cal.App.2d 308, 310 [146 P.2d 947].) By impressing such a trust upon the share of the wife in a case like this, she would be prevented from obtaining a property interest that she should not have during the lifetime of her husband; if the husband dies without requesting her to convey the property, the wife would not be a constructive trustee but by virtue of the right of survivorship and in full harmony with the oral agreement she would obtain the beneficial and legal title contemplated by the parties.

Plaintiff asserts that community and joint funds were used to purchase the above mentioned property and hence it was joint tenancy or community property. It will be recalled that implicit in the court's finding is a conclusion to the contrary. Plaintiff and defendant were married in 1937 (they lived together about five years). It is conceded that defendant had as his separate property, assets of about $30,000 when

he married plaintiff, consisting in part of savings of about $14,000. Defendant maintained a commercial account in his name in the Security First National Bank. Defendant testified as to the first parcel, he made the down payment of $338.40 from his account in the Security First National Bank, and the balance of $4,431.34 from his savings account in a different bank. The second parcel was purchased with funds transferred from the savings account to the Security First National Bank account. The rest of the property was handled in a similar manner. Generally, defendant testified: ''Q. And did the purchase price of all of these properties come from your separate funds? A. They did. Q. No contributions of any kind were made by Mrs. Huber? A. None from anybody.'' Contrary to plaintiff's testimony defendant stated that plaintiff did not perform work in improving and repairing the property. The foregoing is clearly sufficient to support a finding that the property was paid for from his separate funds. ■ Real property purchased with the separate funds of the husband is his separate property. (See *Tomaier v. Tomaier, supra;* 3 Cal.Jur. 10-Yr.Supp., Community Property, § 38.) ■ Likewise the rents, issues and profits therefrom and increase in value thereof are separate property. (Civ. Code, § 163; 3 Cal.Jur. 10-Yr.Supp., Community Property, § 44.) It, therefore, follows that the equitable title to the property, the increase in value and rents and profits thereof were defendant's separate property, unless there are some factors which alter the situation.

■ Plaintiff contends that the purchase price of the property and rents, issues and profits are community property because the funds for the purchase and rents, etc., were placed in defendant's account with the Security First National Bank in which also were placed his earnings; that the latter were community property and there was a commingling of funds. Plainly the trial court properly concluded by implication that the purchase price was from separate funds, either because there was no commingling or the funds were traced. Defendant in each case transferred sufficient money for the purchase of the property from his savings account to the Security First National Bank account, and immediately checked it out to pay the purchase price. It is suggested that there is some $18,000 unaccounted for by defendant, but in the face of the testimony of the defendant as to the source of the funds used for the purchase price, such cannot disturb the court's finding. What may have happened to the income from the real property and

the amount withdrawn by defendant from his business is not significant, as it lacked community status—it remained his separate property. ▉ If a portion of the income from some of the separate real property was used to purchase other real property, the latter would be separate property. In this connection, with reference to the deposit of defendant's earnings and the rents, etc., from the real property in the same account, plaintiff urges that defendant drew $300 per month from his business (custom broker, which was admittedly his separate property) and that such constituted his earnings. ▉ In regard to earnings, the rule is that where the husband is operating a business which is his separate property, income from such business is allocated to community or separate property in accordance with the extent to which it is allocable to the husband's efforts or his capital investment. (*Estate of Gold,* 170 Cal. 621 [151 P. 12]; *Witaschek* v. *Witaschek,* 56 Cal.App.2d 277 [132 P.2d 600]; 3 Cal.Jur. 10-Yr. Supp., Community Property, § 46.) ▉ Plaintiff testified that defendant brought home $300 per month as salary from his business. Defendant, on the other hand, testified that: "Q. Mr. Huber, do you have the exact amount that you brought home in the way of salary checks from the time of your marriage until you closed your business in February, 1942? A. Well, *I took a hundred and fifty ($150.00) dollars out of my money every two weeks,*" indicating that it was not necessarily salary. The business required considerable capital ($15,000 to $20,000) to operate as money was advanced for customers. Defendant's accountant testified that from his computation of the figures there was no community capital invested in the business and that the business would warrant a salary of $150 per month to defendant. Under these circumstances the court was justified in reaching the conclusion that the earnings allocable to community property consisted of $1,800 per year for the years 1938, 1939, 1940 and 1941. After February, 1942, there was no income from the business. He turned it over to another person. Defendant testified that to run the household it cost $80 to $90 a month. ▉ It is presumed that the expenses of the family are paid from community earnings. (See *Title Ins. & Trust Co.* v. *Ingersoll,* 158 Cal. 474, 492 [111 P. 360]; *Estate of Cudworth,* 133 Cal. 462 [65 P. 1041]; *Estate of Tompkins,* 123 Cal.App. 670 [11 P.2d 886]; *Van Camp* v. *Van Camp,* 53 Cal.App. 17 [199 P. 885].) The exact amount of money allocable to community property placed in the bank account with the rents,

etc., from the real property being ascertained, it was not so commingled that all of the fund became community property. It could be traced. It does not appear, however, what was done with the balance of the earnings, that is, the $60 to $70 per month left after the household expenses were paid. Hence it cannot be said that there was no community property. However, there is no issue on this appeal as to any community property other than the real property involved in this action as plaintiff appealed only from that part of the interlocutory judgment "wherein it was adjudged that the plaintiff has no interest in the *real properties described in the amended complaint* and that the same are separate property of the defendant." Since the evidence is amply sufficient to support the portion of the judgment appealed from, the same must be affirmed.

Finally, plaintiff contends that the court could not properly in this divorce action determine that plaintiff had no joint tenancy separate property interest in the real property and that it belonged to defendant alone as his separate property. She urges that a court in a divorce action is limited to the disposition of the community property and cannot pass upon a dispute as to the separate property, citing *Allen* v. *Allen,* 159 Cal. 197 [113 P. 160]; *Reid* v. *Reid,* 112 Cal. 274 [44 P. 564], *Roy* v. *Roy,* 29 Cal.App.2d 596 [85 P.2d 223], *Callnon* v. *Callnon,* 7 Cal.App.2d 676 [46 P.2d 988], and *Glass* v. *Glass,* 4 Cal.App. 604 [88 P. 734]. While the court in a divorce action should not "assign the separate property of one of the spouses to the other" (*Fox* v. *Fox,* 18 Cal.2d 645, 646 [117 P.2d 325]), yet when the issue has been made the court may determine whether the property is separate or community and quiet title in the rightful owner. (*Salveter* v. *Salveter,* 206 Cal. 657 [275 P. 801]; *Allen* v. *Allen,* 159 Cal. 197 [113 P. 160]; *Spahn* v. *Spahn,* 70 Cal. App.2d 791 [162 P.2d 53].) Here the pleadings put in issue the status of the property and the rights of the parties therein both separate and community.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied April 25, 1946.