Sherma G. BRASELTON, aka Sherma G. Dausses, Plaintiff-Appellant,

v.

CLEARFIELD STATE BANK and Russell F. Braselton, Defendants-Appellees.

CLEARFIELD STATE BANK, Third Party Plaintiff,

v.

Jerry K. MALAN and Berniece Malan, Third Party Defendants.

No. 78–1007.

United States Court of Appeals, Tenth Circuit.

Argued March 16, 1979.

Decided Sept. 25, 1979.

Rehearing Denied Oct. 29, 1979.

John R. Weber of Weber & Drake, Sacramento, Cal., for plaintiff-appellant.

Raymond W. Gee of Kirton, McConkie, Boyer & Boyle, Salt Lake City, Utah, for defendant-appellee Clearfield State Bank.

Peter Toft Combs, Reno, Nev., for defendant-appellee Braselton.

Before SETH, Chief Judge, and DOYLE and McKAY, Circuit Judges.

McKAY, Circuit Judge.

This appeal primarily involves the res judicata effect on appellant's federal district court complaint of a prior California state court divorce decree.

In 1959 appellee Russell Braselton entered into an escrow agreement and uniform real estate contract relating to the sale of real property located in Ogden, Utah. Appellee Clearfield State Bank was the escrow agent under the escrow agreement. In February of 1963, Braselton and appellant married. Later that year, Braselton gave appellant an assignment of all his rights in the two agreements.

Thereafter, and until June of 1973, the Bank paid all money received pursuant to the agreements to appellant. On June 7, 1973, one day following Braselton's filing of a divorce petition in California, Braselton and the purchasers gave the Bank a power of attorney purportedly signed by appellant. This document supposedly authorized Braselton to "transact all matters" in connection with the agreements. Thereupon, the Bank delivered the escrow money and documents to Braselton.

In November of 1975, Braselton was granted an "interlocutory judgment of dissolution of marriage" by a California state court. The court concluded that the Ogden property was Braselton's separate property. This judgment became final in January of 1976.

In March 1977 appellant filed her complaint in federal district court. Jurisdiction was based on diversity of citizenship. Appellant claimed she had not signed the power of attorney in question and sought damages from appellees. The district court granted summary judgment in favor of appellees, concluding that appellant's claim was barred by the res judicata effect of the California divorce judgment. The court denied appellant's request to file supplemental pleadings and her request that formal findings of fact and conclusions of law be entered.

I.

The latter two actions of the district court are among the challenges on appeal. We are not persuaded by appellant's arguments on these two points. Whether to permit the filing of supplemental pleadings was within the sound discre-

tion of the trial court. We see no abuse of discretion in its decision. As to the other contention, findings of fact and conclusions of law are simply not required on decisions of motions for summary judgment. Fed.R. Civ.P. 52(a).

## II.

The principal issue raised on appeal is whether the trial court correctly determined that appellant's district court complaint was barred by the res judicata effect of the California divorce judgment. "As stated in many cases, the doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions . . . ." 46 Am.Jur. *Judgments* § 394 (1969) (footnotes omitted). The doctrine encompasses two aspects: "pure" res judicata and what is generally referred to as collateral estoppel. As explained by the Supreme Court,

> under the doctrine of *res judicata*, a judgment "on the merits" in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit.

*Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955) (footnote omitted).

■ Res judicata is a doctrine of constitutional significance. The Full Faith and Credit Clause, U.S.Const. art. IV, § 1, re-

quires that "Full Faith and Credit shall be given in each State to the . . . Judicial Proceedings of every other State." State courts are therefore required "to give to a judgment at least the *res judicata* effect which the judgment would be accorded in the State which rendered it." *Durfee v. Duke*, 375 U.S. 106, 109, 84 S.Ct. 242, 244, 11 L.Ed.2d 186 (1963). The collateral estoppel aspect of res judicata is included within the operation of the Full Faith and Credit Clause. *United States v. Silliman*, 167 F.2d 607, 621 (3d Cir.), *cert. denied*, 335 U.S. 825, 69 S.Ct. 48, 93 L.Ed. 379 (1948). Although federal judicial proceedings are not expressly included within the Full Faith and Credit Clause, it is clear that full faith and credit must be given by federal courts to state court judgments. *Davis v. Davis*, 305 U.S. 32, 40, 59 S.Ct. 3, 83 L.Ed. 26 (1938); *Mills v. Duryee*, 11 U.S. (7 Cranch) 481, 485, 3 L.Ed. 411 (1813).[1]

Applying these doctrinal threads to the fabric of the instant case, it is clear that the district court was required to determine the applicability of res judicata to appellant's action by a determination of what res judicata effect would be given the divorce decree by the courts of California.

## III.

■ Consistent with the general view, the courts of California conceptualize the res judicata doctrine as having two distinct prongs—the one being to bar a second litigation of a cause of action already adjudicated and the other being what is generally referred to as collateral estoppel. *See, e. g., Clemmer v. Hartford Insurance Co.*, 22 Cal.3d 865, 151 Cal.Rptr. 285, 288–89, 587 P.2d 1098, 1101–02 (1978) (en banc); *Panos v. Great Western Packing Co.*, 21 Cal.2d 636, 134 P.2d 242, 243 (1943); *McNulty v. Copp*, 125 Cal.App.2d 697, 271 P.2d 90, 94 (1954).

---

1. The cited cases rely exclusively on the statute implementing the Full Faith and Credit Clause, which in its present and earlier versions refers to "*every* court within the United States." 28 U.S.C. § 1738 (1976) (emphasis added). The same result is also reached in this case by other analysis. Since jurisdiction was based on diversity, under the doctrine of *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), as it has been developed, the district court was required to decide the question of res judicata applicability as would the courts of the state in which it sat. Since those courts would be required to give full faith and credit to the California judgment, the federal district court would also be so required.

California courts adhere to the view that res judicata, in either of its two major forms, requires, among other things, that the court rendering the prior judgment was jurisdictionally competent to do so. *E. g., Panos v. Great Western Packing Co.*, 21 Cal.2d 636, 134 P.2d 242, 243 (1943). It is the question of the extent of the California divorce court's jurisdiction which principally divides the parties.

The nature and extent of the California divorce court's orders and rulings concerning the Ogden property must be reviewed to determine whether they were within its jurisdiction. The final judgment of dissolution of appellant's marriage to Braselton incorporated by reference and made final the terms set forth in the court's earlier interlocutory judgment of dissolution of the marriage. Record, vol. 2, at 55. The interlocutory decree treated the Ogden property in these terms:

> 6. The following property is confirmed to Petitioner as his separate property: the [Ogden,] Utah property . . . .

Record, vol. 2, at 54. The court's earlier "Notice of Intended Decision" further explained:

> *UTAH PROPERTY:*
>
> Although there were suspicious circumstances concerning the legal title to this property, the evidence is insufficient to find that Respondent has any interest therein. It is therefore found to be the separate property of Petitioner.

Record, vol. 2, at 45. Curiously, the court made this additional comment in its "Notice of Intended Decision" in discussing its conclusion that another parcel of real estate had remained community property:

> All circumstances surrounding the execution of the deed support her testimony. Petitioner himself prepared the deed, took her to a notary, and further evidenced to what great lengths he will go to achieve his purposes *by forging the power of attorney regarding the Utah property.*

Record, vol. 2, at 44 (emphasis added).

It is clear that the California court sought to make a binding disposition of the interest in the Ogden, Utah, property by confirming it to Braselton as his separate property. Appellant argues that it lacked jurisdiction to make such a determination, claiming that "[t]he California Divorce Court's jurisdiction over the parties' separate property is limited only to the characterization of same as separate." Appellant's Brief at 12. It is claimed that resolution of *whose* separate property an item of separate property is may only be determined in a subsequent action by a court of general jurisdiction.

Appellees acknowledge the general accuracy of appellant's description of the divorce court's jurisdiction. However, they urge that *Allen v. Allen*, 159 Cal. 197, 113 P. 160 (1911), carves out an exception to the general rule which authorizes the court to dispose of separate property when "an issue is made by the pleadings as to separate property and both parties, without objection, have submitted the question to the court." Appellee Bank's Brief at 9.

The court in *Allen* broadly stated:

> [I]t is no doubt true . . . that as a general rule the superior court in a divorce proceeding has no jurisdiction to deal with the separate property of the spouses. But the superior court in which the action for divorce must be brought is also invested with general jurisdiction to determine title to real property, whether based on legal or equitable claims, and if the parties in a divorce proceeding see fit to make the character of property held by them—whether separate or community— an issue in the proceeding, as the court is vested with jurisdiction to determine that question as fully as if the title were put in issue in a direct action brought for that purpose, the same effect must be given to its judgment as if such an action had in fact been brought.

113 P. at 162. In *Spahn v. Spahn*, 70 Cal. App.2d 791, 162 P.2d 53 (1945), the court reviewed several California cases, including *Allen*, and concluded:

> [W]hatever the character of the property, whether community or separate, the par-

ties had by their pleadings and stipulation, made its disposition an issue for the court to decide. Under the California cases to which attention has been directed, the trial court [in a divorce proceeding] then had full jurisdiction to decide such issue.

162 P.2d at 56. *See Huber v. Huber*, 27 Cal.2d 784, 167 P.2d 708 (1946).[2] *See also Kulchar v. Kulchar*, 1 Cal.3d 467, 82 Cal. Rptr. 489, 462 P.2d 17 (1969).[3]

We have noted that the divorce court sought to determine who owned the property in question. The issue was clearly raised by the parties. The California pleadings, made a part of our record, indicate that appellee Braselton asked the court to rule that he owned the interest in the Ogden realty as separate property. Record, vol. 2, at 72, 74. Appellant characterized it as community property—*i.e.*, as property "subject to disposition by the court in this proceeding." Record, vol. 2, at 76, 78. This brings the case before us comfortably within the long-established rule of *Allen, Spahn,* and *Huber.* The California court had jurisdiction to declare the property to be appellee Braselton's.

### IV.

■ Having decided that the court had jurisdiction to resolve the question of entitlement to the interest in the Ogden property, we readily affirm the summary judgment granted Braselton. It is clear that appellant's present action against him is barred by the doctrine of "pure" res judicata. These same parties were before the California court, and this same cause of action was determined. The judgment was on the merits; the court had subject matter jurisdiction to render it. Whether the precise issue of forgery was determined against appellant in that proceeding is irrel-

evant, for res judicata in the narrow sense, unlike collateral estoppel, binds "the parties to the suit and their privies . . . 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 579, 94 S.Ct. 806, 812, 39 L.Ed.2d 9 (1974) (quoting prior Supreme Court decisions). *See Busick v. Workmen's Compensation Appeals Board*, 7 Cal.3d 967, 104 Cal.Rptr. 42, 500 P.2d 1386, 1392 (1972) (en banc); *Olwell v. Hopkins*, 28 Cal.2d 147, 168 P.2d 972, 975 (1946) (en banc).

### V.

■ The propriety of granting summary judgment to appellee Bank is considerably more troubling. It was not a party to the prior action; appellant's claim against the Bank is grounded on the Bank's own alleged negligence in acting upon the "Power of Attorney" delivered to it by appellee Braselton, which appellant claims was of no legal effect. Since appellant's cause of action against the Bank is distinct from the one adjudicated by the divorce court, any res judicata benefit accruing to the Bank as a result of the prior judgment could be only of the collateral estoppel variety.

Our appraisal of what collateral estoppel effect in favor of the Bank would be given the divorce decree by the California courts is facilitated by recent decisions of that state's highest court. In *Clemmer v. Hartford Insurance Co.*, 22 Cal.3d 865, 151 Cal. Rptr. 285, 587 P.2d 1098 (1978) (en banc), the Court, relying principally on Justice Traynor's landmark decision in *Bernhard v. Bank of America*, 19 Cal.2d 807, 122 P.2d 892 (1942), stated the applicable law as follows:

---

2. In *Huber*, the court stated: "While the court in a divorce action should not 'assign the separate property of one of the spouses to the other,' . . . yet when the issue has been made the court may determine whether the property is separate or community *and quiet title in the rightful owner.*" 167 P.2d at 714 (emphasis added).

3. Writing for the majority in *Kulchar*, Chief Justice Traynor stated expansively: "Interlocutory divorce decree [sic] are res judicata as to all questions determined therein, including the property rights of the parties." 462 P.2d at 19.

[A] party will be collaterally estopped from litigating an issue only if (1) the issue decided in a prior adjudication is identical with that presented in the action in question; *and* (2) there was a final judgment on the merits; *and* (3) the party *against* whom the plea is asserted was a party . . . to the prior adjudication.

587 P.2d at 1101–02 (emphasis added in part). A court must be able to ascertain that the issue claimed to be settled was "necessarily decided" in the prior litigation. *Levy v. Cohen*, 19 Cal.3d 165, 137 Cal.Rptr. 162, 561 P.2d 252, 256 (1977) (en banc); *People v. Taylor*, 12 Cal.3d 686, 117 Cal. Rptr. 70, 527 P.2d 622, 625 (1974) (en banc).

Clearly, the issue of the Bank's negligence was not raised, much less was it decided, in the California proceeding. Even if resolution of the Bank's negligence should ultimately turn on whether appellee Braselton forged the power of attorney, it cannot be concluded that the California court necessarily decided that factual issue adversely to appellant. The Bank's claim is that the court necessarily found that no forgery had occurred in reaching its judgment that the property was the separate property of Braselton. This conclusion does not follow from the record. First, on the basis of what is before us,[4] we are unable to conclude that the only theory before the court, and therefore an issue necessarily determined by it, was whether Braselton had forged the power of attorney. Second, in the only recorded reference to the discrete issue of forgery, the California court, as stated earlier, declared that Braselton "forg[ed] the power of attorney regarding the Utah property." Record, vol. 2, at 44. While we do not have available a ready explanation of how the judgment could reasonably have been reached in face of that factual conclusion, this significant inconsistency leaves us unable to conclude that the California court "necessarily decided" the forgery issue one way or the other.

4. All we have available from the California proceeding is what the parties made available below. Apparently the divorce proceeding was not recorded. In any event, no transcript is in the record. We have before us the pleadings,

VI.

The grant of summary judgment in appellee Braselton's favor is affirmed. Res judicata bars prosecution of appellant's present claim against him. The grant of summary judgment in appellee Bank's favor is reversed. Collateral estoppel does not preclude appellant from pressing her negligence action against the Bank. The latter cause is remanded for trial.

the court's notice of intended decision, its amended proposed findings of fact, and the interlocutory and final judgments of dissolution of marriage.