[Civ. No. 18771. Fourth Dist., Div. One. Sept. 27, 1979.]

In re the Marriage of VIRGINIA M. and ROY A. SPARKS, JR.
ROY A. SPARKS, JR., Appellant, v.
VIRGINIA M. SPARKS, Respondent.

354

---

**COUNSEL**

John A. Meanley for Appellant.

Bright, Helm & Cantero and Anthony W. Bright for Respondent.

---

**OPINION**

**THE COURT.**\*—Roy A. Sparks, Jr. (Roy), petitioner below, appeals an interlocutory judgment of dissolution of his marriage to Virginia M.

---

\*Before Brown (Gerald), P. J., Cologne, J., and Focht, J.†

†Assigned by the Chairperson of the Judicial Council.

Sparks (Virginia). During the marriage the parties purchased a large unimproved parcel of land in Jamul, California, which all agree is community property of the marriage. Later a piece of the parcel was split off, and on it Virginia had built a single family residence, using funds in the sum of $46,668 acquired from a Mr. Breidenstein, the elderly husband of Virginia's great aunt. Mr. Breidenstein lived with the Sparks for the last four years of his life, from 1970 to 1974, following his wife's death, and Virginia took care of him with some help from Roy during that time. In 1974 shortly · before the parties here separated, Mr. Breidenstein gave Virginia his single family Escondido home in which all three parties and the Sparks children were living; some furniture in that house; and the sum of $61,929 cash, from which account came the funds to build the Jamul house. The trial court found the Jamul house was Virginia's separate property, while the underlying real property was community property. At the time of construction, the land was worth $17,000 and the cost of construction of the house was the stated $46,668. At time of trial, the fair market value of the house and land were found to be $87,000. Applying the original ratio of value of land to value of house, the court found the value of the land to be $23,490, and in its order awarded the land and house to Virginia but gave Roy a credit for one-half the land value less $740 for other community property items awarded to him, or a total credit of $11,005.

Roy contends the trial court erred in finding the house to be separate property, because by analogy to the doctrine of fixtures and also because of the absence of a reimbursement agreement, Virginia's expenditure of her separate funds to improve the community real property results as a matter of law in the house and land becoming community property. Roy relies on *In re Marriage of Smith,* 79 Cal.App.3d 725 [145 Cal.Rptr. 205], in which wife used her separate funds to add a swimming pool to a community property residence and the entire improved residence was held community, on the theory of an intended gift to the community with no reimbursement agreement. Further, Roy alternately contends even if the house is separate property, Virginia is not entitled to apportionment of the present value, but rather is only entitled to get back the separate funds she invested in the amount of $46,668, or in other words, the appreciation of the property is a community asset.

The case of *In re Marriage of Smith, supra,* 79 Cal.App.3d 725, 742-743, holds the status of separate property used to improve community

property is one of fact, and there left intact the trial court's finding of fact the contributing wife intended a gift. ■ Here, however, the trial court has found as a fact no gift was intended, but rather, Virginia always intended the Jamul house should be her separate property. There is substantial evidence in the record to support the finding. Virginia testified Roy never wanted a house; she herself authorized the construction of the house and used the money received as a gift from Mr. Breidenstein; she always viewed the house as hers and it has always been in her name. Although Roy testified he was not happy with this arrangement and tried several times to get her to put the house in their joint names, his wishes are obviously not controlling on the question of Virginia's intent. The problem is not one of tracing, since uncontradicted evidence establishes the source of the funds for the house to be the Breidenstein money which the trial court characterized as separate property of Virginia. The transmutation in form of the funds does not alter its separate property status (*In re Marriage of Mix,* 14 Cal.3d 604, 612 [122 Cal.Rptr. 79, 536 P.2d 479]), nor does the state of the title, but rather, the intent of the parties is controlling, and the question of intent is factual. (*Mears* v. *Mears,* 180 Cal.App.2d 484, 500 [4 Cal.Rptr. 618].) The doctrine of accession law and the rules regarding voluntary improvement of another's land do not apply to this characterization problem. Here, the value of the house forms the lion's share of the value of the entire improved parcel, and application of the law of fixtures would produce an unjust and unwarranted result.

■ The apportionment method of valuation of the land used in the trial court was but a technique for determining that value, absent direct proof of the value of the land apart from the house. Since Roy did not offer any contrary evidence of the land's value, he is not in a position to challenge the court's valuation. There is no authority for the proposition Virginia is only entitled to reimbursement on these facts. Since the house is separate property, its appreciation is also separate property to which she is entitled. There is no showing her efforts during the marriage went to produce that appreciation so as to require some apportionment to the community. (See *Pereira* v. *Pereira,* 156 Cal. 1 [103 P. 488]; *Estate of Gold,* 170 Cal. 621, 623 [151 P. 12]; *In re Marriage of Folb,* 53 Cal.App.3d 862, 871-872 [126 Cal.Rptr. 306].)

In *In re Marriage of Jafeman,* 29 Cal.App.3d 244 [105 Cal.Rptr. 483], the court used an apportionment formula like that used here where the

husband used community property funds to improve his separate property. Roy argues the case is inapplicable because the husband there had management and control of the community, and to deny the wife apportionment was unfair, but here the situation is reversed, Virginia has used her property to improve the community, hence no apportionment is required. Although *Jafeman* is not controlling here, neither does it preclude the trial court's use of apportionment to value the land. In fact, the *Jafeman* case is of little use at bench to either side.

The judgment is affirmed.

Appellant's petition for a hearing by the Supreme Court was denied November 21, 1979.