Filed 2/16/24  Croft v. Napoleon CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LAURA D. CROFT,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>ANDREA NAPOLEÓN,<br><br>    Defendant and Appellant. | A168199<br><br>(San Mateo County Super. Ct. No. 23-CIV-01870) |

Andrea Napoleón appeals from the trial court's order restraining her from having any contact with Laura D. Croft for two years based upon the court's finding that Croft presented sufficient proof to justify issuance of the order.  Napoleón claims error, but fails to support her claim with any reasoned legal argument or citation to relevant legal authority.  Concluding that the trial court's order is supported by substantial evidence, we affirm.

## I. BACKGROUND

In April 2023, Croft sought a civil harassment restraining order from the San Mateo County Superior Court prohibiting Napoleón from having any contact with her.  The court issued a temporary restraining order and then held a hearing regarding a permanent one, with the parties present and representing themselves.

1

**A. *Croft's Account***

In Croft's statement in support of her request for a restraining order (which she testified at the hearing was true and accurate), and in her testimony, Croft described a course of conduct by Napoleón dating back to January of 2021. According to Croft, she assisted Napoleón's mother in recording a gift deed that transferred certain property to Napoleón, which deed Croft's office prepared and recorded, and for which all exemptions were approved and granted. Napoleón herself was never Croft's client.

Regardless, Napoleón was unhappy with Croft's work despite Croft's attempts to allay her concerns. To express these concerns, Napoleón repeatedly appeared at Croft's office, uninvited, and made a disturbance. According to Croft, "[B]etween January 26, 2021 and December 10, 2021, [Napoleón] incessantly harassed and threatened our office, my employees, and myself, showing up without an appointment, screaming at us, making irrational and unreasonable demands. We consistently provided her proof that her mother's work was completed and successful. She continued to show up at the office and her behavior became increasingly erratic, alarming and disturbing. I locked our office doors, kept our shades drawn, provided escorts to my employee's cars, and had security outside our public events. I emailed and mailed her [a] 'cease and desist' letter after an incident on December 10, 2021, explaining that we would call the police and file a restraining order if she continued her actions."

Croft further stated that in March 2023, Napoleón "filed a frivolous small claims action" regarding Croft's work on the gift deed. Napoleón subsequently filed 10 amended complaints, trial occurred, and the court decided the case in Croft's favor.

Croft further stated that on April 17, 2023, at 6:15 p.m., minutes after she arrived home, Napoleón entered her home: "[W]hile I was feeding 2 of my

2

children dinner, while the other 2 played outside, [Napoleón] showed up at my house. My friend opened the door and as I rounded the corner [Napoleón] came into my house. I ran at the door, yelling, 'get the fuck our [*sic*] of my house, I am calling 911.' She trespassed on my property and entered my house, without permission, and with express prohibition from such entry." Napoleón did not leave until Croft called the police. Croft stated, "I was horrified, shocked and in a state of fear, panic and anxiety that [Napoleón] found my address, and showed up at my house, when my children were there. I am rarely home at this time and I believe she has been stalking me, and keeping me under surveillance. Her disturbing behavior up to this point had me concerned for my business, my employees, and myself; however, her coming to my house and entering my house has escalated this matter and is now causing me extreme fear for myself and children."

Croft stated that she subsequently filed a police report. She also stated that the next day, someone knocked on her door for 15 minutes and, although she did not know if it was Napoleón, she was "terrified that [Napoleón] was coming back to attack, hurt, harass, threaten, force entry, or worse."

### B. *Napoleón's Account*

Prior to the hearing, Napoleón filed with the court a written response to Croft's request for a civil harassment order, in which she contended that she had not mistreated Croft or any of Croft's office staff; that Croft's statements in support of that allegation were false; that her contact with Croft was limited; and that she did not contact Croft at all after December 10, 2021 until she attempted to serve her in April 2023 with a subpoena.

As Napoleón does in her appeal, she tried to tell the trial court at the restraining order hearing about Croft's purportedly bad work on the gift deed and show the court documents related to that dispute. The court declined to review at the hearing some of what Napoleón tried to present as not relevant

3

to the restraining order matter or necessary for the court to review at that time.  The court also stated that it had reviewed Napoleón's written response, which appears to contain most of the documents Napoleón attempted to show the court at the hearing.

Regarding Croft's harassment allegations, Napoleón stated that, "[a]fter January 26, 2021, I made two additional trips to [Croft's] office address . . . [b]ecause I wanted her to correct The Parent/Child Gifting that was prepared and recorded by her . . . and wanted her to explain "ALL" that she included with The Parent/Child Gifting.  I did not mistreat any of her employees or Laura Diane Croft.  The statements she is making are false; including the fact that her work was not consistent or professional giving a lot of 'inconsistent messages' not following through.  I was upset and communicated in the clearest way possible by US mail, phone calls and two additional visits stated above."

Napoleón further stated that after Croft emailed her on December 10, 2021 [an apparent reference to Croft's cease and desist letter], Napoleón "did not contact her again," meaning she did not "email, US mail, or go to her office."[1]  Napoleón "filed the papers to go to court September 28, 2022, she was unwilling to answer my questions, or correct her work."

Napoleón further stated that on April 17, 2023, she attempted to serve a subpoena to Croft for personal appearance and production of documents at trial, apparently in small claims court, by going to an address listed for Croft with the California Secretary of State.  She had first given the subpoena to the sheriff but "it was taking them too long," and she tried to hire a

---

[1] Contrary to Napoleón's statement, her own response filed with the trial court contains a February 19, 2022 email she sent to, among others, Croft, asking what conversations Croft had with relatives of Napoleón.

4

professional process server but "[e]verything was taking too long, so I decided I'm going to do it myself because that's something legal I'm going to do and that's what is so."

Napoleón stated that she drove to the address, saw that the door to the residence was open, immediately found a place to park, and rang the doorbell. "I heard a young girl say something and Laura Croft came near the door and started calling 911. She refused to receive the papers (Subpoena) and I leaned over the door and left them on the floor in front of her." Napoleón added at the hearing, "And she started to call 911, and for a moment, I almost wish I would have waited, but I figured I did what I was supposed to do. I served her, and—and I did something legal." She claimed she did not enter Croft's house and did not harass her.

### C. *Other Evidence*

Napoleón included several documents in her written response to Croft's request for a restraining order, some of which we note here.

In three written communications from Napoleón to Croft dated May 21, 2021, and June 21, 2021 (Napoleón sent two letters on that date), Napoleón insisted that Croft answer questions about her work on the gift deed and send her various documents, including "everything" Croft submitted to Alameda County and her notes of her conversations with relatives of Napoleón.

Croft's December 10, 2021 "cease and desist" email to Napoleón is also contained in Napoleón's written response. Croft wrote, "We received your voicemail. Do not come to the office, we will not be making any copies for you. You have harassed and verbally attacked multiple members of our staff, all after completing the transfer of your mother's asset and receiving the exclusion. This has been ongoing for a year. Yesterday, you came to the office without an appointment and proceeded to again verbally attack and

harass our staff. As we've told you multiple times, you are not our client. If your mother needs copies or has any questions, she may contact us at any time. [¶] Further, as previously stated, you are not welcome at our office. If you come here again at any time in the future, we will call the police and file a restraining order based on your prior and continued conduct."

There is also a small claims subpoena ordering Croft's personal appearance and production of things in a small claims court case initiated by Napoleón, which subpoena was issued on April 10, 2023. Napoleón declared under penalty of perjury that she served Croft with these papers on April 17, 2023, by leaving them in front of Croft "on the floor as the door was open."

### D. *The Trial Court's Ruling*

At the conclusion of the hearing, the court found Croft had met her burden of proof and issued a two-year restraining order against Napoleón. Napoleón then told the court it was "very possible" she was going to have to go to court again and asked if she could subpoena Croft. The court replied, "You need to hire a process server. . . . [I]t would certainly be in violation of this restraining order if you were to show up at her house again for any purpose. . . . Obviously when you are in court, that would not be a violation."

The court subsequently issued a written restraining order that prohibited Napoleón from contacting Croft directly or indirectly and from coming within 100 yards of Croft or her home, workplace, and vehicle.

Napoleón filed a timely notice of appeal.

## II. DISCUSSION

### A. *Legal Standards*

Code of Civil Procedure section 527.6 (section 527.6) provides for the issuance of temporary and permanent restraining orders for a "[a] person who has suffered harassment." (§ 527.6, subd. (a)(1).) Section 527.6, subdivision (b)(3) defines " '[h]arassment' " as including "a knowing and

6

willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." A " '[c]ourse of conduct' " is "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose . . . . Constitutionally protected activity is not included within the meaning of 'course of conduct.' " (§ 527.6, subd. (b)(1).) It "must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).)

The purpose of an injunction, such as a restraining order, " 'is to prevent future harm to the applicant by ordering the defendant to refrain from doing a particular act. [Citations.] Consequently, injunctive relief lies only to prevent threatened injury and has no application to wrongs that have been completed.' " (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1265–1266.) Courts have instructed that a restraining order is authorized when evidence establishes the " 'reasonable probability' " the acts will be repeated in the future and " 'that harassment is likely to recur in the future.' " (*Yost v. Forestiere* (2020) 51 Cal.App.5th 509, 527.)

At a hearing for issuance of a permanent restraining order, "the judge shall receive any testimony that is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment" for up to five years. (§ 527.6, subds. (i), (j)(1).) Evidence that is "clear and convincing" is evidence that is " ' "clear, explicit and unequivocal," "so clear as to leave no substantial doubt," and "sufficiently strong to command the unhesitating

assent of every reasonable mind." ' " (*Utility Consumers' Action Network v. Public Utilities Com.* (2010) 187 Cal.App.4th 688, 698.)

We review a trial court's restraining order ruling for abuse of discretion (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 849–850) and the trial court's express and implied factual findings for substantial evidence (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188). Under the substantial evidence standard, "we accept all evidence supporting the trial court's order," "we completely disregard contrary evidence," "we draw all reasonable inferences to affirm the trial court," and "[w]e do not reweigh the evidence." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581.) The testimony of a single witness, even if that witness is a party to the case, may constitute substantial evidence. (See *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)

## B. *Analysis*

Napoleón argues error in two rambling, confused, repetitive, and often vituperative appellate briefs unsupported by citations to relevant legal authority or reasoned legal argument.

While we recognize that Napoleón is representing herself, we must nonetheless hold her "to the same standards as attorneys. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 985 ['A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation.'].)" (*Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543.)

Among these standards is the precept that the appellant "has the burden of persuasion; '[o]ne cannot simply say the court erred, and leave it up to the appellate court to figure out why.' " (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1237.) " 'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to . . .

8

support [a point] with reasoned argument and citations to authority, we treat the point as waived." ' " (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

Also, " '[a]n appellant who challenges a factual determination in the trial court . . . must marshal *all* of the record evidence relevant to the point in question and affirmatively demonstrate its insufficiency to sustain the challenged finding.' " (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 415.) "If the appellant fails to fairly state all material evidence, we may deem waived any challenge based on insufficiency of the evidence." (*Ibid.*, accord, *Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 713–714.)

Napoleón does not comply with these standards. She does not make any reasoned legal argument for her claims and we fail to see the relevance of the little case law she cites, such as *Brown v. Board of Education* (1954) 347 U.S. 483 and *Plessy v. Ferguson* (1896) 163 U.S. 537. She makes little effort to fairly state all of the material evidence that was before the trial court. She has therefore waived her appellate arguments, including her principal claim—that the trial court violated her constitutional equal protection rights by issuing the restraining order. Accordingly, we affirm the trial court's order.

Buried in a series of barely decipherable arguments are two that merit some brief discussion. Napoleón contends the court erred in issuing the restraining order because (1) there was insufficient evidence that she harassed Croft because Croft did not present, and a biased trial court did not ask for, any corroborating evidence to support Croft's overly vague, false claims and (2) Napoleón was doing what the law allowed when she went to

9

Croft's home on April 17, 2023—serving Croft with a subpoena—rather than harassing her.

Contrary to the first of these arguments, there was substantial evidence to support the court's decision to issue a restraining order. Croft outlined a course of conduct in which Napoleón had engaged dating back to January 2021. Specifically, Croft indicated that for close to a year, Napoleón, who was never her client, had repeatedly threatened and harassed her and her law office staff, showing up without an appointment at the law office, screaming, making irrational and unreasonable demands, and becoming increasingly erratic, alarming, and disturbing in her behavior, all despite Croft providing Napoleón proof that the work Croft was retained for—by Napoleón's mother and not Napoleón—was successfully completed. Napoleón's mid-2021 demand that Croft give Napoleón all of Croft's submissions to the County and all of her notes of discussions with certain relatives of Napoleón, even though Napoleón was not a client, and Croft's December 10, 2021 cease and desist letter provide corroborating evidence for Croft's contentions about Napoleón's conduct in 2021.

Croft further indicated that she became so alarmed by Napoleón's behavior that she locked her office doors, drew the office blinds, provided escorts for office staff going to their cars, and arranged for security for the firm's public events. Eventually, in December 2021, she sent the cease and desist letter to Napoleón.

Further, according to Croft, in April 2023, Napoleón, in pursuit of frivolous claims in small claims court, entered Croft's residence at a time when Croft and her children were present. She did not leave until Croft called the police, and Croft was so alarmed that she filed a police report regarding the incident.

Taken together, we see plenty of proof here to support the court's findings. Those findings are supported by substantial evidence that Napoleón engaged in a "knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose," and that this course of conduct caused Croft substantial emotional distress, as it would any reasonable person (§ 527.6, subd. (b)(3)). Further, there is substantial evidence that there was a reasonable probability that Napoleón would continue to engage in the activity complained of by Croft. Napoleón continued to harass Croft after Croft had given her proof of the successful completion of the relevant legal work, and Napoleón herself made clear she would not stop pursuing her contentions against Croft when she told the court that it was "very possible" she was going to have to again go to court and again subpoena Croft.

Napoleón's arguments to the contrary show a failure to understand the standard by which we must review the evidence. Rather than grapple with the evidence against her, she repeats her own contentions, which the trial court implicitly rejected, and declares Croft to be mendacious and a liar when the court's ruling implicitly indicates it found Croft to be a credible witness. Napoleón's arguments are ineffective under our standard of review, which requires that we review the record for substantial evidence and ignore the evidence that is contrary to it. (*Schmidt v. Superior Court*, *supra*, 44 Cal.App.5th at p. 581.) Further, " ' " 'it is the exclusive province of the [trier of fact] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " [Citations.] Testimony may be rejected [by the appellate court] only when it is inherently improbable or incredible, i.e., " 'unbelievable *per se*,' " physically impossible or " 'wholly unacceptable to reasonable minds.' " [Citations.]' " (*Lenk v. Total-Western,*

11

*Inc.* (2001) 89 Cal.App.4th 959, 968.) We see no reason to second-guess the trial court's implicit finding that Croft's testimony was credible and Napoleón's was not.

Napoleón repeatedly argues insufficient evidence supports the court's decision to issue a permanent restraining order because Croft did not corroborate any of her contentions with corroborating evidence, such as the police report Croft said she filed. As we have already indicated, there was some corroborating evidence for Croft's account. But regardless, Croft was not required to provide corroborating evidence. As noted above, the testimony of a single witness, even a party, may constitute substantial evidence. (*In re Marriage of Mix* , *supra*, 14 Cal.3d 604, 614; see Evid. Code, §§ 411, 780.) Napoleón insists that Croft was not credible, but matters of witness credibility were for the trial court to assess. Presumably because she is a pro se litigant, Napoleón apparently fails to appreciate that, on appeal, we do not second-guess credibility determinations by a trial court.

Napoleón also contends that the trial court was biased against her, referring to the court's decision not to review certain documents Napoleón offered to the court at the hearing or to ask Croft further questions about her contentions. We see no evidence of bias by the trial court. Much of what Napoleón sought to show the court related to her legal action against Croft, which was not particularly relevant to the matters of harassment before the court, or was contained in Napoleón's written response, which the court indicated it had already reviewed. And Napoleón does not provide any legal basis for her assertion that the court was required to ask anything more of Croft at the hearing; to the contrary, section 527.6 indicates only that the court *may* make an independent inquiry at its discretion. (§ 527.6, subd. (i).)

As for Napoleón's second argument—that she was within her rights to personally serve a subpoena on Croft—this misses the point. That is, other than denying that she entered Croft's house, Napoleón fails to deal with the substantial evidence supporting the trial court's findings favoring Croft, and specifically Croft's testimony that Napoleón *entered* Croft's house when she purportedly was trying to serve her subpoena and *would not leave* until Croft called the police. Even assuming Napoleón was attempting to serve Croft with a subpoena herself at the time, she was not entitled to trespass into Croft's home in an attempt to do so. She had no legitimate purpose for that action, and her failure to leave until Croft called the police further showed the alarming nature of her conduct.

As for Napoleón's contention that she is legally entitled to serve a subpoena to Croft in the future, the court did not prohibit her from doing so, provided that she herself does not personally serve the subpoena but, rather, employs a process server for that purpose. Napoleón does not offer any reasoned legal argument or relevant legal authority establishing that the trial court could not restrain her from personally serving such a subpoena, thereby waiving this argument. (*Cahill v. San Diego Gas & Electric Co.*, *supra*, 194 Cal.App.4th at p. 956.)

### III. DISPOSITION

The order appealed from is affirmed. Croft shall recover her costs of appeal.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

13