Filed 11/4/24  Marriage of Shields CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| In re the Marriage of ROBYN and STEVEN SHIELDS. | C098005 |
| ROBYN SHIELDS,<br><br>Appellant,<br><br>v.<br><br>STEVEN SHIELDS,<br><br>Appellant. | (Super. Ct. No. 18FL43332) |

Steven and Robyn Shields[1] were married in 2005 and separated in 2017.  Their marital dissolution case was tried over three days in September 2022.  They have one child who was 13 years old at the time of the trial.  The family court entered a judgment

---

[1]  We will refer to the parties by their first names for clarity.

of dissolution and denied Steven and Robyn's motions to modify the judgment.  Steven appeals from the judgment and Robyn cross-appeals.

I.  Steven contends the family court erred in:

(A) calculating the equalization payment for real property in Bear Valley;

(B) awarding to Robyn, as her separate property, funds in various investment accounts;

(C) denying his request for attorney's fees;

(D) summarily denying his request for child support;

(E) ruling that his claim of reimbursement to community funds was time-barred; and

(F) refusing to reopen evidence regarding the sale of Robyn's dental practice.[2]

II.  Robyn contends the family court erred in:

(A) calculating the equalizing payment for real property in Murphys;

(B) using the time rule to apportion separate and community property interests in Steven's 401(k) account; and

(C) concluding it had no jurisdiction to retroactively modify a February 27, 2020 temporary family support order.

Regarding Steven and Robyn's challenges to the equalization payments (contentions I(A) and II(A)), we agree the calculations were incorrect.  As for Steven's challenge to the child support order (contention I(D)), we agree the order was deficient.  In relation to Steven's contention I(E), we conclude the family court applied the wrong

---

[2]  Steven also requests, under Code of Civil Procedure section 170.1, subdivision (c), that we remand the matter to a different judge.  We do not address the request because it was made for the first time in Steven's appellate reply brief.  (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10 (*Garcia*); *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 (*Neighbours*).)

standard in determining that Steven's claim for reimbursement was time-barred. We also agree with Robyn's contention II(B) that the family court erred in using the time rule to apportion interests in Steven's 401(k) account. We conclude, however, that the remaining contentions asserted by Steven and Robyn lack merit.

We will reverse portions of the judgment as specified in the disposition, and remand the matter to the family court to recalculate the equalization payments due for the Bear Valley and Murphys properties, make the required findings relating to child support, redetermine the separate and community property interests in Steven's 401(k) account, and conduct further proceedings on Steven's reimbursement claim for community payments of separate tax obligations. We will otherwise affirm the judgment.

Additional background facts are set forth in the discussion as relevant to the contentions on appeal.

## DISCUSSION

### I

We begin with the contentions asserted in Steven's appeal.

### A

Steven contends the family court erred in calculating the equalization payment for real property in Bear Valley.

During the marriage, Robyn transferred title for the Bear Valley property to her and Steven as community property. She paid off the mortgage and received a mortgage payoff refund of $365.76 in 2018, after she and Steven separated. She occupied the property exclusively starting sometime in 2019. At trial, she sought reimbursement for separate property payments made after the separation pertaining to homeowners association fees, utilities, maintenance, and improvements. Steven objected to the claim for improvement costs. He also argued that the mortgage payoff refund should be credited to the community and that Robyn should pay him for her post-separation use of the property.

3

The family court awarded the property to Robyn as her separate property. Based on the parties' agreement, it found the property had a value of $280,000 and that Robyn owned $196,193 in separate property equity at the time she converted the property to community property. But the family court concluded Robyn did not show that her separate property payments for improvements added a dollar-for-dollar value to the property, and it granted Robyn only $21,185.50 for improvement costs, half of the credits she had requested. The family court credited the community half of the mortgage payoff refund ($182.83) and determined that the community property interest was $62,805.33. From that amount, the family court deducted $54,862.52 for Robyn's exclusive use of the property. It then subtracted $73,512, which it found were *Epstein* credits due Robyn for her mortgage, utility, and maintenance payments. The family court concluded that Steven owed Robyn an equalization payment of $65,569.17 for the Bear Valley property.

Robyn changed the character of the Bear Valley property by executing a grant deed conveying the property to her and Steven as community property. (See Fam. Code, § 852, subd. (a);[3] *In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1100.) The family court properly recognized that the property was community property but that Robyn was entitled to her separate property equity and reimbursement for separate property contributions. (*In re Marriage of Rico* (1992) 10 Cal.App.4th 706, 710.)

The parties do not challenge the family court's finding that the property had a value of $280,000 at the time of the trial and that Robyn had a separate property interest of $196,193. On appeal, Steven also does not challenge the credit to Robyn of $21,185.50 in separate property contributions. Based on those undisputed facts, Robyn had a separate property interest of 77.635% (or $217,378.50) and the community

_____

[3] Undesignated statutory references are to the Family Code.

property interest was 22.365% (or $62,621.50).  The parties disagree, however, as to the proper accounting for credits and charges.

*Epstein* credits reimburse a spouse who, after separation, uses separate property to pay a community obligation.  (*In re Marriage of Mohler* (2020) 47 Cal.App.5th 788, 797, fn. 4 (*Mohler*); *In re Marriage of Jeffries* (1991) 228 Cal.App.3d 548, 552 (*Jeffries*).)  A family court has discretion to order reimbursement in an amount that is equitable.  (*In re Marriage of Hebbring* (1989) 207 Cal.App.3d 1260, 1272 (*Hebbring*).)  *Watts* charges compensate the community for the reasonable value of use when a spouse has exclusive use of a community asset between separation and trial.  (*Mohler,* at pp. 796-797; *Jeffries,* at p. 552.)  *Epstein* credits and *Watts* charges "are, respectively, to be paid from or paid to the community.  Inasmuch as both spouses have an equal interest in community assets [citation], and in light of a [family] court's obligation under the Family Law Act to divide community assets equally between the parties upon a dissolution of the marriage [citation], it follows that the net effect of allocating '*Epstein* credits' and '*Watts* charges' in a division of community assets should be (1) the equal sharing of '*Epstein* credits' by both spouses and (2) the equal bearing of '*Watts* charges' by both spouses."  (*Jeffries,* at p. 553, italics omitted.)

Steven argues there is no evidence to support the family court's award of $73,512 in *Epstein* credits to Robyn.  Robyn agrees the evidence showed she incurred and paid $37,705.60, not $73,512, in community expenses.  Based on Robyn's trial testimony and exhibit 22, we accept the concession as proper and conclude the family court's finding that Robyn was owed $73,512 in *Epstein* credits is not supported by the evidence in the record.  Exhibit 22 shows the amount of *Epstein* credits due Robyn from the community was $37,705.60.

Steven further argues Robyn did not present any tracing evidence to substantiate her claim for *Epstein* credits.  We disagree.  Robyn testified about a Quicken report detailing the payments she made.  She testified that all of the payments were made from

her separate property funds, and account statements showed those payments. She referenced pages 14 to 18 of exhibit 22 which detailed payments for property taxes, home association fees, maintenance, property insurance, and utilities for the Bear Valley property. The family court credited her testimony. Robyn's testimony is substantial evidence supporting the family court's finding. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 (*Mix*); see *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581-583 [the trial court's factfinding is reviewed for substantial evidence, the trial court is the sole judge of witness credibility in a bench trial, and the trial court's factfinding will not be disturbed on appeal if supported by substantial evidence].)

Citing section 2640, Steven asserts that *Epstein* credits may not exceed the property's net value. Section 2640, subdivision (b) does generally provide that the amount to be reimbursed to a party for separate property contributions may not exceed the net value of the property at the time of the division. However, section 2640 does not limit reimbursable amounts when separate property is used for community property improvements or to pay community obligations after separation. (*Hebbring, supra*, 207 Cal.App.3d at p. 1272.) Instead, the award of *Epstein* credits in that circumstance is within the family court's discretion, based on principles of equity and fairness. (*Ibid.*; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2024) ¶ 8:459.) In any event, when the amount of *Epstein* credits is corrected, the total of Robyn's separate property equity, contributions, and *Epstein* credits do not exceed $280,000.

In addition, Steven argues the family court erred in accounting for the *Watts* charges. We agree there was error, although not in the way Steven urges. *Watts* charges should be paid *to* the community, but the family court deducted the *Watts* charges from the community property interest. Doing so did not compensate the community for the *Watts* charges.

There were other errors. When, as here, the community has a partial interest in the real property, *Watts* charges due the community are the portion of reasonable value

6

of use (the net rental profit) attributable to the community's interest.  (*Mohler, supra*, 47 Cal.App.5th at p. 798)  *Mohler* instructs that a family court should multiply the community property's interest by the amount of net rental profit to determine the sum the occupying spouse must pay the community for use of the property.  (*Ibid.*)  The family court did not account for the community's partial interest in the property in calculating *Watts* charges.  Additionally, the family court did not reimburse Robyn for *Epstein* credits from the community.  And although Robyn testified she received a mortgage payoff refund of $365.76, the family court credited the community only one-half of the amount. We will remand for the family court to recalculate the equalization payment after accounting for *Watts* and *Epstein* credits and the $365.76 mortgage payoff refund.

B

Steven challenges the award to Robyn, as her separate property, of funds in various investment accounts.

Property owned by Robyn before marriage, and property she acquired by gift, bequest, devise or descent, are her separate property.  (§ 770, subd. (a); *Mix, supra*, 14 Cal.3d at p. 610.)  "Except as otherwise provided by statute, neither spouse has any interest in the separate property of the other."  (§ 752.)  But there is a rebuttable presumption that property acquired during marriage is community property.  (§ 760; *Mix,* at pp. 610-611.)  If separate and community property are commingled " ' in such a manner that the respective contributions cannot be traced and identified, the entire commingled fund will be deemed community property.' "  (*In re Marriage of Simonis* (2023) 95 Cal.App.5th 1129, 1142 (*Simonis*).)  The spouse asserting that an asset is separate property bears the burden of proof.  (*Mix,* at pp. 610-611.)

A family court may consider any credible evidence in determining the character of property interests.  (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 97 (*Ciprari*).) Funds may be traced to a separate property source using specific records reconstructing each separate and community property deposit and each separate and community

7

property withdrawal as it occurs. (*Simonis, supra*, 95 Cal.App.5th at p. 1143.) This method, called direct tracing, is based on the principle that " 'separate funds do not lose their character as such when commingled with community funds in a bank account so long as the amount thereof can be ascertained.' " (*Mix, supra*, 14 Cal.3d at p. 612.) Other evidence that may be used to establish the separate and community property character of funds includes evidence of an agreement between the parties regarding the character of property. (*Ciprari,* at pp. 91, 97 [stating that a trial court may consider other credible evidence and evaluate other tracing methods in determining the character of property interests].) Whether the community property presumption is overcome is a question of fact for the family court. (*Mix,* at p. 612*.*) We will uphold the family court's factual finding if supported by substantial evidence. (*Ciprari*, at p. 95; *In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 823.)

Robyn testified about various Charles Schwab (Schwab) accounts. Schwab account Nos. 6426, 4735, and 5513 were placed in trusts created after the death of her first husband. Account Nos. 6426 and 4735 contained the first husband's half of their marital estate. Funds from account No. 5513 were transferred to account No. 8302 in December 2008. Another Schwab account (No. 6129) was created after the first husband's death and contained monies gifted to help support Robyn and her son after the first husband's death. Robyn testified that community property funds were never deposited into account Nos. 6426, 4735, or 6129. She said those accounts were her separate property.

However, account No. 5513/8302 contained both separate property and community property funds and there were separate and community withdrawals from that account. Robyn presented exhibits listing deposits, withdrawals, interest, dividends, and fees for account Nos. 6426, 4735, and 5513/8302, showing which funds were community property and which were separate property. She showed that community property

withdrawals from account No. 5513/8302 exceeded the community property deposits, and the growth from the community property deposits, in that account.

Steven asked for half of the community property deposits in account No. 5513/8302 and all of the growth from those deposits, which he said totaled $157,230. He testified there were sufficient community property funds in the account to cover community expenses. But he also testified that there were insufficient community property funds in the account to pay for a $10,000 or $12,000 vacation during the marriage.

Regarding a Hallador Balanced Fund, LLC (Hallador) account, Robyn presented exhibits listing all deposits to the account and tracing the sources of the deposits. She testified that $179,873 of the deposits were community property funds but that community property withdrawals from Schwab account No. 5513/8302 exceeded community deposits, and growth from community deposits, in both the Schwab and Hallador accounts. Steven testified that $246,596.39 of the deposits to the Hallador account were community property funds.

The family court found Steven's testimony regarding the accounts self-serving and not credible. It said Robyn credited the community property with deposits of unknown source and her testimony regarding the accounts was credible. It found that the parties were largely in agreement as to the community property deposits and nothing refuted Robyn's evidence of community property withdrawals. The family court concluded Robyn met her burden of tracing the deposits and withdrawals and she showed that community property withdrawals exceeded community property deposits. It considered all of the deposits and withdrawals from the Schwab and Hallador accounts together and awarded the money in those accounts to Robyn as her separate property with no equalization payment to Steven.

Steven contends that if Robyn withdrew funds from the commingled Schwab account No. 5513/8302 to pay community expenses, the withdrawals should be deemed

9

to be from her separate property. The claim is without merit because Robyn's testimony and exhibits traced separate and community property sources of deposits and withdrawals. Robyn also traced separate and community property sources of deposits to the Hallador account. The trust agreement Steven and Robyn executed for the Shields 2008 Revocable Trust (Shields trust), in which the Schwab and Hallador accounts were placed, provided that all property conveyed to the trustee as part of the trust estate shall retain its characterization as community or separate property and the character of the property may be changed by a writing signed by the trustor. Robyn testified she did not sign anything changing the separate property character of the Schwab and Hallador accounts.

Steven also argues the family court erred in offsetting the excess community property withdrawals from the Schwab account No. 5513/8302 against the community property deposits in the Hallador account. The cases he cites do not persuade us that the family court erred. In *Ciprari*, the parties did not dispute that the husband gifted his separate property to the community. (*Ciprari, supra*, 32 Cal.App.5th at p. 90.) But here, Robyn made no such concession. And in *See v. See* (1966) 64 Cal.2d 778, the Supreme Court held that a husband who controlled the community property and elected to use his separate property to pay community expenses could not claim reimbursement. (*Id.* at p. 785, superseded by statute as stated in *In re Marriage of Perkal* (1988) 203 Cal.App.3d 1198, 1201-1202.) Here, however, the family court rejected Steven's claim that Robyn controlled their marital finances and there was no finding that Robyn elected to use her separate property funds from the Schwab and Hallador accounts to pay community expenses. Additionally, *Simonis,* a case in which the husband tried to offset all community debts he paid against all community assets he held, is also factually distinguishable. Robyn did not seek a credit based on all community assets and payments.

10

The Schwab account No. 5513/8302 and the Hallador account were placed in the Shields trust. Steven and Robyn viewed the accounts as vehicles for investing community property funds. They considered both accounts as sources for paying community expenses. Steven has not established that it was error for the family court to consider the two accounts together.

In urging that he was entitled to a share of the community property funds in the Hallador account, Steven asserts that Robyn is not entitled to reimbursement for community expenses exceeding community property deposits in the Schwab account No. 5513/8302 because she controlled the Schwab and Hallador accounts and did not withdraw community property funds from the Hallador account to pay community expenses. But the family court rejected Steven's testimony that he was not involved in financial decision-making, finding Steven's testimony not credible. We do not reconsider the family court's credibility determination. (*In re Marriage of Dandona & Araluce* (2001) 91 Cal.App.4th 1120, 1126.)

C

Steven further contends the family court abused its discretion in denying his request for attorney's fees under sections 2030 and 2032.

In a proceeding for dissolution of marriage, a family court has discretion to award attorney's fees "where making the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties." (§ 2032, subd. (a); see § 2030, subd. (a)(1).) "In determining what is just and reasonable under the relative circumstances, the [family] court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320." (§ 2032, subd. (b); see § 4320 [providing that in ordering spousal support a trial court must consider factors including (a) the extent to which the earning capacity of each party is sufficient to

11

maintain the standard of living established during the marriage; (b) the ability of the supporting party to pay spousal support; (c) the needs of each party based on the standard of living established during the marriage; (d) the obligations and assets, including the separate property, of each party; (e) the duration of the marriage; (f) the ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party; (g) the age and health of the parties; (h) the immediate and specific tax consequences to each party; (i) the balance of the hardships to each party; and (j) any other factors the court determines are just and equitable]; *In re Marriage of Fransen* (1983) 142 Cal.App.3d 419, 422, 426 [reciting other factors a trial court may consider in ruling on a need-based request for attorney's fees].) A family court should consider the recipient's relative need for the payment of attorney's fees and the payor's ability to pay. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 318, *In re Marriage of Ananeh-Firempong* (1990) 219 Cal.App.3d 272, 280; see *In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 662-663 [stating that section 2030 is concerned with relative need]; *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1167.) The court may also consider a party's litigation tactics. (*In re Marriage of Hearn* (2023) 94 Cal.App.5th 380, 394 (*Hearn*); *In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457, 469 (*Nakamoto & Hsu*); *In re Marriage of Turkanis & Price* (2013) 213 Cal.App.4th 332, 356 (*Turkanis & Price*).) Sections 2030 and 2032 require an analysis of the totality of the circumstances. (*Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 258.) The family court must make explicit findings on whether an award of attorney's fees is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. (§ 2030, subd. (a)(2); *Hearn,* at p. 393; *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1050.) We review the family court's attorney's fee decision for abuse of discretion. (*Hearn,* at p. 394; *Nakamoto & Hsu,* at p. 469.) We uphold findings of fact supported by substantial evidence. (*Hearn*, at p. 394.) We will

12

overturn the family court's order only if, considering all of the evidence viewed most favorably in support of the order, no judge could reasonably make the same order. (*Ibid.*)

Steven asserts that the family court did not make findings regarding disparity in access to funds and ability to pay. Not so. The family court made findings regarding relevant section 4320 factors. Because Steven would receive a net equalization payment from Robyn, the family court concluded he could pay his own attorney's fees, even if Robyn had more assets. It ruled that there was no need-based justification for ordering Robyn to pay Steven his attorney's fees. In other words, the family court found that regardless of the assets Robyn will receive in the division of property, an award of attorney's fees under section 2030 was not appropriate and there was no disparity in access to funds to warrant an award of attorney's fees to Steven.

Robyn traced most of her assets to a trust arising from her first husband's death. Her real property assets totaled $1,105,000. The family court considered the parties' income and expense declarations. Those showed Steven had $520,680 in assets and he earned an average monthly income of $19,409 as an engineer and from other sources. In addition, the family court awarded him an equalization payment of $237,469.94. Robyn worked as a dentist part time and earned a net monthly income of $2,979.32. Substantial evidence supports the family court's findings.

Steven argues the family court had no discretion to consider whether he had taken an unreasonable position in the litigation, but he is incorrect. (*Hearn, supra*, 94 Cal.App.5th at p. 394; *Nakamoto & Hsu, supra*, 79 Cal.App.5th at p. 469; *Turkanis & Price, supra*, 213 Cal.App.4th at p. 356.) Steven added, in his appellate reply brief, that it was improper for the family court to stay payment of the equalization amount to him, but we do not address the belated argument. (*Garcia, supra*, 16 Cal.4th at p. 482, fn. 10; *Neighbours, supra*, 217 Cal.App.3d at p. 335, fn. 8.)

Steven also requests an award of attorney's fees on appeal. The request, made for the first time in his reply brief without a showing of good cause, is forfeited. (*Garcia,*

13

*supra*, 16 Cal.4th at p. 482, fn. 10; *Neighbours, supra*, 217 Cal.App.3d at p. 335, fn. 8.) Robyn and Steven's requests to augment the record on appeal are denied.

D

Steven next argues the family court erred in summarily denying his request for child support.

The family court found there was a 50-50 custody arrangement. Considering Steven and Robyn's income and expense declarations, it found their incomes were sufficient to fully meet the child's financial and other needs and it declined to impose guideline child support. Citing sections 4056 and 4057, it ruled that child support would be set at zero.

We review child support orders under the abuse of discretion standard of review. (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1046 (*Cryer*).) However, " 'determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule.' " (*Id.* at p. 1047.)

A family court must adhere to the statewide uniform guideline (§ 4050 et seq.) in calculating child support, and the guideline amount is presumed to be the correct amount to be ordered. (§§ 4052, 4053, subd. (k), 4057, subd. (a); *In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 385 (*Bodo*).) Guideline support is calculated using the formula in section 4055. (§ 4055, subd. (b); *In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 528.) Departure from guideline support may be appropriate when application of the guideline " 'would be unjust or inappropriate due to special circumstances in the particular case' [citation], so long as the variance is consistent with" the principles set forth in section 4053, chief of which is the protection of the child's best interest. (*Cryer*, *supra*, 198 Cal.App.4th at p. 1048; see §§ 4053, subds. (e), (k), 4057, subd. (b); see also *Bodo*, at pp. 385-386.) When it orders child support that differs from the guideline amount, the family court must state, in writing or on the record, the amount of support

14

that would have been ordered under the guideline formula, the reasons the amount of support ordered differs from the guideline formula amount, and the reasons the amount of support ordered is consistent with the best interests of the child. (§ 4056, subd. (a); *In re Marriage of Hubner* (2001) 94 Cal.App.4th 175, 183 (*Hubner*).)

Although the family court stated that application of the guideline formula would not be in the interests of justice, it did not state the information required in section 4056 and it did not articulate what special circumstances in the case made application of the guideline formula unjust or inappropriate. (§ 4057, subd. (b); *In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 145 [stating that if the trial court exercises its discretion to vary the guideline amount, it must make an accurate computation of the guideline amount and not just estimate that amount].) The required findings cannot be gleaned from the record. (See *Hubner, supra*, 94 Cal.App.4th at p. 183 [stating that failure to make required findings may constitute reversible error if the missing information is not otherwise discernible from the record].) Robyn suggests the family court deviated from the guideline amount because Steven is an extraordinarily high income earner within the meaning of section 4057, subdivision (b). But the record does not show such a finding by the family court. We will remand for the family court to make the required findings.

In his appellate reply brief, Steven asserts the family court erred in refusing to hear evidence regarding Robyn's income or ability to work. Because the argument was not raised in Steven's appellate opening brief we do not consider it. (*Garcia, supra*, 16 Cal.4th at p. 482, fn. 10; *Neighbours, supra*, 217 Cal.App.3d at p. 335, fn. 8.)

E

Steven also contends the family court erred in finding that his claim of reimbursement to community funds was time-barred.

Steven sought reimbursement to the community for community property funds used to pay Robyn's separate property tax obligations from 2005 to 2018, along with tax

15

preparation fees.  Upon objection by Robyn's counsel that Steven's reimbursement claim was barred under section 920, the family court ruled that Steven should have known community property funds were used to pay the taxes when he signed tax returns to that effect, and hence his reimbursement claim was barred by the statute of limitations.

"The separate property of a married person is liable for a debt incurred by the person before or during marriage." (§ 913, subd. (a).)  The community is entitled to reimbursement when a spouse uses community property funds to pay his or her separate obligation.  (*In re Marriage of Epstein* (1979) 24 Cal.3d 76, 89, superseded by statute on another ground as stated in *In re Marriage of Perkal, supra*, 203 Cal.App.3d at pp. 1201-1202; *In re Marriage of Frick* (1986) 181 Cal.App.3d 997, 1014; *In re Marriage of Walter* (1976) 57 Cal.App.3d 802, 806-807; see §§ 2550, 2553.)  A right to reimbursement arising under section 900 et seq. must be exercised the earlier of (i) three years after the spouse in whose favor the right arises has actual knowledge of the application of the property to the satisfaction of the debt or (ii) the marital dissolution proceeding.  (§ 920, subd. (c).)

Because actual knowledge of the improper use of community property funds triggers the three-year period in section 920 (§ 920, subd. (c)(1)), the family court's application of a "should have known" standard was incorrect.  We will remand for further proceedings on Steven's claim for reimbursement.  The family court must determine when Steven had actual knowledge of the application of community property funds to satisfy Robyn's separate tax obligations.

F

Steven further contends the family court abused its discretion in refusing to take additional evidence regarding the sale of Robyn's dental practice.

On the first day of trial, the parties presented evidence regarding Robyn's dental practice.  At the end of Steven's testimony, his counsel said Steven had no further witnesses.  During Robyn's testimony, her counsel directed Robyn's attention to an

16

agreement in which Robyn's father had transferred the dental practice to her as a gift. Robyn's counsel noted that the exhibit contained only the first and last pages of the transfer agreement. The exhibit was admitted into evidence with no objection from Steven. The family court decided the disposition of the dental practice on the first day of the trial.

On the final day of trial, Steven moved to reopen the evidence regarding the sale of the dental practice. His counsel said that although he had a copy of the entire transfer agreement, he overlooked the fact that Robyn's exhibit had only the first and last pages. Steven's counsel added he was finally able to serve a subpoena on Robyn's father and he wanted to call him as a witness regarding the sale and the value of the dental practice. Steven's counsel acknowledged that he should have previously mentioned not being able to serve Robyn's father with a subpoena.

The family court denied Steven's request to reopen the evidence. Steven had not established that Robyn's father had relevant testimony and it would be inappropriate to reopen the evidence.

"Trial courts have broad discretion in deciding whether to reopen the evidence. [Citation.] We review a court's denial of a motion to reopen evidence for an abuse of discretion. [Citation.] The appropriate test for abuse of discretion is whether the trial court's decision exceeded the bounds of reason." (*Horning v. Shilberg* (2005) 130 Cal.App.4th 197, 208-209; see *In re Marriage of Honer* (2015) 236 Cal.App.4th 687, 699-701.) The party seeking to reopen the evidence must provide a satisfactory explanation for the failure to present the additional evidence at the trial and act in a diligent manner. (*Stewart v. Cox* (1961) 55 Cal.2d 857, 866; *Broden v. Marin Humane Society* (1999) 70 Cal.App.4th 1212, 1222.)

We find no abuse of discretion. Steven did not show that he acted diligently in serving a subpoena on Robyn's father, he did not adequately explain his failure to seek admission of the omitted agreement pages before the family court ruled on the dental

17

practice, and he did not make an offer of proof as to what testimony Robyn's father would provide that would materially change the family court's ruling. The record does not show a substantial change in circumstances following the family court's ruling that warranted reopening the evidence. (Cf. *In re Marriage of Olson* (1980) 27 Cal.3d 414, 422 [the trial court should have reopened the trial to make a current determination of the community's assets and debts where the family residence assigned to the wife was sold in a foreclosure sale after the trial but before entry of the interlocutory decree].)

II

We turn next to Robyn's contentions in her cross-appeal.

A

Robyn contends the family court erred in calculating the equalizing payment for real property in Murphys.

As with the Bear Valley property, Robyn transferred title in the Murphys property to herself and Steven as community property during the marriage. Robyn moved out of the property in August 2018, after she and Steven separated, and Steven took over paying the mortgage. Steven made $68,285 in separate property payments on the mortgage. He sought reimbursement for those payments, plus $38,416 in separate property payments for property taxes, mortgage interest, property insurance, and maintenance costs. Robyn sought payment for Steven's post-separation use of the property in the fair market rental value amount of $3,000.47 a month.

The family court found, based on the parties' agreement, that the property had a value of $850,000. Upon Steven's stipulation, the family court further found that Robyn's separate property interest in the property was $223,141.68. It deducted the following from the value of the property: Robyn's separate property interest, what it described as Steven's separate property interest ($68,285), Steven's *Epstein* credits ($19,208), and *Watts* charges ($73,511.50).

18

The family court found that the community property interest was $465,853.82. It awarded Steven half as his separate property ($232,926.91), then added $68,285 and $19,208 to Steven's share of the community property interest and concluded that in order to award the Murphys property to Robyn as her separate property, Robyn must pay Steven $320,419.91 as an equalization payment. The family court subsequently deducted rent-back charges ($12,000) from the equalization payment so that Steven may remain in the house for four months, resulting in a total equalization payment from Robyn to Steven of $308,419.91.

Robyn challenges how the family court accounted for *Watts* charges for Steven's post-separation use of the Murphys property.

Steven argues Robyn forfeited her appellate contention. But Robyn's counsel objected during trial to the manner in which the family court calculated the equalizing payment. In addition, Steven challenged the family court's accounting of *Epstein* credits and *Watts* charges in his motion to set aside the judgment, and the motion discussed Robyn's counter claims regarding *Watts* charges. Accordingly, we will consider Robyn's claims.

The family court properly recognized that Steven should be reimbursed for separate property contributions after separation and should pay the reasonable value of use after separation. For reasons we explained in the section relating to the Bear Valley property, however, it was error for the family court to deduct *Watts* charges from the community property interest and not to calculate the portion of the reasonable value of use (the net rental profit) attributable to the interests of the community and Robyn. Also, the family court accounted for only half of the *Watts* charges ($147,023). The *Watts* charges are payable by Steven to the community.

Regarding *Epstein* credits, the family court included all of Steven's separate property mortgage payments but only half of his separate property insurance, tax, interest, and maintenance cost payments, and it required Robyn to pay the amount to

Steven.  *Epstein* credits are paid from the community.  (*Jeffries, supra*, 228 Cal.App.3d at p. 553.)  Moreover, the family court's reason for treating the two types of reimbursements for separate property contributions differently is not set forth in the record.  We will remand for the family court to recalculate the equalization payment Robyn must pay Steven for the Murphys property.

In her appellate reply brief, Robyn asserts that the family court did not account for a balance on an outstanding loan on the property, or consider Robyn's *Epstein* credits.  We do not address those assertions because they were not raised until the reply brief.  (*Garcia, supra*, 16 Cal.4th at p. 482, fn. 10; *Neighbours, supra*, 217 Cal.App.3d at p. 335, fn. 8.)

B

Robyn next argues the family court erred in using the time rule to apportion separate and community property interests in Steven's 401(k) account.[4]

Community property includes the property right to retirement benefits attributable to employment during marriage.  (*In re Marriage of Green* (2013) 56 Cal.4th 1130, 1134; *In re Marriage of Belthius* (2023) 88 Cal.App.5th 1, 9 (*Belthius*); see *Green*, at pp. 1137-1138.)  "Upon dissolution of the marriage, the family court 'must apportion an employee spouse's retirement benefits between the community property interest of the employee spouse and the nonemployee spouse and any separate property interest of the employee spouse alone.  [Citations.]' " (*Belthius,* at p. 9; accord *Green*, at p. 1142.)  The family court has discretion on how to apportion the interests so long as the result fairly

---

[4]  We disagree with Steven's contention that Robyn forfeited her time-rule challenge.  Robyn's trial brief stated that she sought to divide interests in Steven's 401(k) account based on community earnings during the marriage, and she subsequently objected to the family court's use of the time rule.

represents the relative contributions of the separate and community estates.  (*Green*, at p. 1142; *In re Marriage of Poppe* (1979) 97 Cal.App.3d 1, 8 (*Poppe*).)

The family court used what is called the time rule to apportion the separate and community interests in Steven's Lockheed Martin 401(k) account.  " 'Under the time rule, the community is allocated a fraction of the [pension] benefits, the numerator representing the length of service during marriage but before separation, and the denominator representing the length of service by the employee spouse.  That ratio is then multiplied by the final plan benefit to determine the community interest.  [Citations.]' " (*Belthius, supra*, 88 Cal.App.5th at pp. 9-10)  The rational for the time rule is that "[w]here the total number of years served by an employee-spouse is a substantial factor in computing the amount of retirement benefits to be received by that spouse, the community is entitled to have its share based upon the length of service performed on behalf of the community in proportion to the total length of service necessary to earn those benefits.  The relation between years of community service to total years of service provides a fair gauge of that portion of retirement benefits attributable to community effort.' " (*Poppe, supra*, 97 Cal.App.3d at p. 8, italics omitted.)  But apportionment using the time rule is appropriate only where the amount of retirement benefits is substantially related to the employee spouse's years of service.  (*Ibid.*)  In *Poppe*, apportionment of retirement benefits using the time rule was an abuse of discretion because the amount of the husband's retirement benefits was not a function of his years of service, and thus the number of years of service during the marriage was not a fair gauge of the community contribution.  (*Ibid.*)

A 401(k) plan is a defined contribution retirement savings plan established under Internal Revenue Code section 401(k).  (Marie Bechtel, et al., Dividing Pensions and Other Employee Benefits in California Divorces (Cont. Ed. Bar 2023) § 6.19.)  The employee's benefits upon retirement depend on the amount of contributions made and the performance of investments in the plan (see generally Brett R. Turner, 2 Equit. Distrib. of

21

Property (4th ed. 2024 Update) § 6:24) and not on the number of years worked. (See generally *In re Marriage of Bergman* (1985) 168 Cal.App.3d 742, 748, fn. 4; cf. *In re Marriage of Lehman* (1998) 18 Cal.4th 169, 174.) Because Steven's years of service during the marriage were not a fair gauge of the community contribution to the retirement benefits under the Lockheed Martin 401(k) account, use of the time rule was inappropriate. We will remand to the family court so that it can redetermine the separate and community property interests in the 401(k) account using an apportionment method that fairly represents the relative contributions of the community and separate estates. (*Poppe, supra*, 97 Cal.App.3d at p. 11.)

C

Robyn also contends the family court erred in concluding it had no jurisdiction to retroactively modify a February 27, 2020 temporary family support order.

There is authority " 'that a trial court lacks jurisdiction to retroactively modify a temporary support order to any date earlier than the date on which a proper pleading seeking modification of such order is filed [citation], unless the trial court expressly reserves jurisdiction to amend the support order such that the parties' clear expectation is the original support award is not final [citation].' " (*Last v. Superior Court* (2023) 94 Cal.App.5th 30, 43; accord *In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1317-1318.) The record on appeal does not show a reservation of jurisdiction by the family court as to the February 27, 2020 temporary support order.

The family court granted Robyn's request to void an August 11, 2020 order for temporary family support. It ruled that a February 27, 2020 order setting temporary family support at $2,000 a month remained in effect, and it set an evidentiary hearing on whether the support could be modified retroactive to an earlier date. The evidentiary hearing was set for October 27 and 28, 2021. But subsequent minute orders did not mention modifying the temporary family support order retroactively or reserving

22

jurisdiction to address retroactive modification of the temporary family support order, and they did not mention a request by Robyn for the return of family support payments to Steven. There was no indication that Robyn's request for order filed on April 5, 2021, remained on calendar. Instead, the family court set a settlement conference and cancelled the October 27 and 28 evidentiary hearing by stipulation of counsel.

Robyn appears to contend that the February 27, 2020 order contains a reservation of jurisdiction pertaining to the $2,000 temporary family support. But the reservation of jurisdiction in paragraph 6 of the February 27, 2020 order refers only to March 28, 2019 support orders. It does not reserve jurisdiction as to the February 27, 2020 ordered amount or any other temporary support order. Robyn does not establish that the family court's ruling was erroneous.

Finally, Robyn asks this Court to order Steven to return the family support payments she paid him from August 2020 to April 2021. The request is forfeited because it is not supported by legal analysis and citation to authority. (*Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1; *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656.)

## DISPOSITION

The judgment is reversed with regard to the Bear Valley and Murphys properties, Steven's request for child support, Steven's 401(k) account, and Steven's claim of reimbursement for community payments of separate property tax obligations. The judgment is otherwise affirmed. On remand, the family court must recalculate the equalization payments due for the Bear Valley and Murphys properties, make the required findings relating to child support, redetermine the separate and community property interests in Steven's 401(k) account, and conduct further proceedings on Steven's reimbursement claim for community payments of separate tax obligations. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

      /s/
MAURO, J.


We concur:


    /s/
ROBIE, Acting P. J.


    /s/
DUARTE, J.